So we will hear argument next in number six. Sixteen one nine nine four skill survey against Checkster whenever you're ready, Mr Pettis. May it please the court, my name is Richard Pettis and I have the privilege today to represent the appellant and patentee skill survey in this appeal. I'd like to begin by first thanking this court for for giving us an opportunity to correct what we believe is a wrongly decided decision and also a premature dismissal of the cause of action. As this court I'm sure is aware, the district court actually held in its opinion that the and provided new and useful results when it was when it was applied. That is a holding that should have fit squarely within the Alice McGraw and Bascom decisions that have held that an unconventional arrangement when applied in a way that produces new and useful results is patent eligible. However, the court did not hold that way. The court still went on and found it ineligible, the claimed invention, and it did so based on one, a misunderstanding where the court held that a novel order combination is not patentable unless it's in the manufacturing context. And then secondly, the court's opinion is full of findings that what the court referred to as arguments by skill survey were not persuasive. And this is the motion to dismiss context and whether or not something is persuasive to a judge subjectively is not the standard. The standard is and should be based on the evidence of record, which in this case was worthy detailed factual allegations of the complaint, which went directly to the factual issues which underpin section 101, as well as the intrinsic record of the patent, but also the PTO findings, which by law should have been taken as true, not vetted as arguments, not evaluated as persuasive or not, and certainly construed in favor of skill survey. But that wasn't the approach taken by the court. This raises a number of issues for this court, one of which is, is it a subjective standard? The PTO findings just remind me, what are those? So in the reasons for allowance of these claims, which were post Alice, the patent office issued two pages of reasons for allowance. They're both irrelevant. You don't want to have us. Yes, Your Honor. It's appendix 250 and 251. Thank you. These are very relevant because the defendant says they're all related to prior art. They're not. The second finding is, says further, this action application is also allowed for the order slash steps in which these limitations take place. For instance, before the interview is conducted. And that is completely contrary to the traditional method that's set forth in the patent, in the intrinsic record, where reference checking was done as a throwaway step after an interview. These inventors moved it before. Why? Because they came up with a very particular, excuse me, particularized implementation. Very novel ordered combination, which aggregated the responses of the multiple references and assured confidentiality based on that. Because those aggregated responses that were statistically scored couldn't be hearkened back to any particular individual. The result, as the patent states- In your claim, going back to that reason for allowance being that all these steps take place before the interview, is your position then that that comes from the where in clause in the claim? I mean, because arguably, that says we're in at least one reference report is configured to allow the, at least one first employer to decide whether or not to conduct the job interview. I mean, it's not, it's the kind of limitation, it being a where in limitation, it's just allowing these steps to occur before the interview. Your Honor, I would, our position respectfully is that it requires it. If you do it after the interview as conventional, you wouldn't infringe. There's certainly no preemption in that respect. And so it is a meaningful restriction on the claim, as is the first part of the reasons of allowance, which is a full page that goes on and recognizes at least, it's multiple particularized steps, but what they are is this aggregation combination of multiple references who are assured of confidentiality. Why? Because they're told your responses are going to be combined. No one will know what you responded, the results are what matter. You get more candid, honest feedback, and it becomes a more effective hiring decision based on those results. And again, that was found to be novel and not obvious. And again, that's 102 and 103, but not conventional. And so here you have a- And when you say what's found, you mean by the examiner now, or- By the examiner. And then there was no, I thought at the very beginning of your argument, you referred to the district court having so found as well, is that right? So the district court didn't address the findings of the PTO. The district court, however, in its decision at page A406 said, here, a novel ordered combination, and then it went on to reject that as being a basis for patentability because it was not in the context of manufacturing. What about the idea that the Supreme Court has told us a few times now that even if the eligible idea, whether it be an abstract idea or naturally occurring subject matter, even if that is novel and non-obvious, you still have to, that's not enough, that there is a discovery, for example, that's amazing and non-obvious doesn't mean that it escapes the one-on-one review. Yes, the Supreme Court has said that, and I believe it was in the Mayo context, and that's when you have a natural- It certainly does, and it was applied. If the abstract idea itself is what's providing the novelty, or the thing that's not obvious, then how do we get around that? So here we have an abstract idea that is so generalized, it's not tied to the limitations. And so you've got an issue on step one and step two. In answer to your question, Your Honor, what the court said is novelty isn't this question. It could be interrelated, but there are facts and underpinnings that are specific and related to novelty, and that is whether it's conventional or traditional. Here there was no evidence whatsoever, and you have to compare the invention, the claimed invention, to what was traditional and conventional. That's a prerequisite, and see if that order combination is eligible over it. Here there were no findings whatsoever, and nor could there be, because there was absolutely no evidence of what was traditional or conventional, except for what's in the patent, which was a phone interview, interpersonal, which this invention revolutionized by its very specific order combination of steps, a third-party computer that had all these assurances of anonymity, and as a result, they found they got more candid, honest feedback, which led to more reliable, accurate results. All of this is alleged in the complaint. All of this is stated in the patent as being the most important results in columns six and eight. So just assuming for a minute that this wasn't on 12b6, and there was some prior art that was available that talked about outside of the computer context, anonymously seeking reference checking, maybe checking for law clerks or something like that, anonymously checking to see what the feedback is, and then the interview occurs after the reference checking occurs. If that kind of evidence was in the record, then you might have a different position, but I think what you're saying is one of the things that makes this satisfy step two is that under 12b6, you have to assume that all of this is novel and non-obvious. Absolutely. That's our frontline argument. This was prematurely dismissed. The record evidence is 100% on the side of the patentee here in terms of the patent office findings, which stand alone as material findings of unconventional nature of the invention and the ordered combination of steps being eligible. That has to be construed in our favor as well. The factual allegations, which are fully supported by the patents of the intrinsic record. The patent says the traditional is a phone interview, interpersonal, it was a waste of time. Everyone viewed it that way. These inventors came up with a technology-based solution that is a third party, and so the example is used by the district court to show preemption, and there is no preemption here whatsoever. No risk. What about the district court statement that the idea at the heart of the patent is anonymously surveying prior employers, and that all these steps in the claim could be performed in the mind? I mean, setting the novelty and obviousness aside, because honestly, that has nothing to do with eligibility, I mean, really, they're separate determinations, 101 versus 102 and 103. What about the fact that the district court looked at it and said, overall, this is something that could be performed in someone's mind, or these steps could have been performed, and so therefore, it's not eligible just saying, I'm going to do this on a computer now. So with all due respect to the district court, and I do believe I'm over my time, but I'd like to answer your question. With all due respect to the district court, first of all, it can't be done by the mind. It's the anonymity that's found here, and this is supported by the documents cited in the complaint, can't be obtained through a human interpersonal interaction. Secondly, there's- That's like an agency or something like that? It requires- A household employment agency? Well, it does require a third party, and the example is used by the court where if an employer were to use this and go out and seek references, that's not preempted. You can do that. This is really, every step, every unique step of this is set up to ensure anonymity, including the aggregation of the scores, which no one had done in the art whatsoever. And so in the mind, when you get to the dependent claims, there's absolutely no way. There are specialized databases where, say you're interviewing nurses at a hospital facility. Those specialized databases that are claimed, you can compare them, benchmark their scores, their aggregated scores, against 10,000 nurses across the industry. That can't be done in the human mind. And the district court didn't even reach the dependent claims. And again, I'm over my time. I'd like to reserve some. I'm happy to answer whatever other questions. Why don't you reserve the remainder? Thank you. Good morning, your honors. Michael Saxtetter, Fenwick & West, on behalf of Chexter. May it please the court. This is another in a long line of cases in which this court has found a patent ineligible for doing nothing more than automating a longstanding economic practice or manner of organizing. It's not yet another of the cases which we have so found. That is a good way. That's actually correct. You want it to be. Yes, I do want it to be. And I believe it is properly resolved that way. But this is a case that at least the district court concluded, and we believe correctly, that this is simply a method of automating what has been a longstanding practice, a longstanding manner of organizing human activity. If you look at the patent itself, which is the primary evidence here and is referenced in the complaint, it's attached to the complaint. And if you start with the abstract and work your way through to the field of the invention, the summary of the disclosure, the detailed description of the invention, all of those describe the invention as basically having three steps, collecting data, analyzing the data, and then generating a report based on that analysis. This court has time and again in numerous cases, fair warning in the electric power group case, has determined that those three steps are abstract, that it is something that does not add anything to an abstract idea. To the extent there is any broadening of the abstract idea here, from what I hear, it is either in the process of anonymity or it's in the process of performing the reference checking prior to doing the interview. Both of those, if we compare the claims and the analysis to prior decisions of this court, which several cases of this court say that's the way that it gets done, is by reasoning by analogy, then we again find that, for instance, the order of steps that is performed is something that this court in Ultramercial found was not patent eligible. That in that case, the advertising was provided before the content. And that was sort of what was determined to be the key step, but that was the abstract idea behind the patented invention. In this case, to the extent that the timing of when the interviews are conducted is relevant, then that is, again, part of the abstract idea. And it is simply a process in the patent of automating that abstract idea. Turning to the question of anonymity, it is done simply by using a computer as a third party intermediary. Going all the way back to Alice, that's something that has been part of an abstract idea. That's something that has been no more than a mere conventional addition to the extent that we get to considering that in the second step of the Alice inquiry. It's also dead on point with the mortgage grader case. Remind me, what is the anonymity here? Obviously, somebody is calling or sending. Describe the anonymity. My understanding of what my friend just said was that because you have a computer, you are able to anonymously and confidentially solicit these references. Well, the references that we're, I mean, somebody must have names of the references. You're not sending out to 350 million people. That's true. But then the references are providing the references, providing the information on the applicant. And that information is then aggregated. The collector is taking the information. But that's something that any employment agency could do, that any headhunter can do. Something that my firm does when we evaluate associates. It isn't exactly the same thing, but we have a numerical scale. And we aggregate that scale and consider where they fall on a continuum based on that scale. That is something that is just a conventional process that gets done all the time. And the computer doesn't add anything to that, except that maybe it can do the math faster. But this court and the Supreme Court have found time and time again, that is not enough to add an inventive step. And Mortgage Grader was the one about anonymously shopping for mortgage rates. Exactly. Exactly. And we think that that case is on all floors with this case. To the extent that there's any kind of an unconventional addition being asserted to be added, and we don't think it is at all, then Mortgage Grader is exactly that kind of claim. It provides anonymity by using a computer. And that's what is asserted here, as I understand Skill Survey's argument. I'd like to discuss briefly the notice of allowability issue. I think there are several things to say about that. First, if you look at the notice of allowability, it's all one large paragraph. And it begins with the examiner saying, the cited patents of record do not teach. And then it lists a number of claim limitations from the asserted claims. And then, in the same paragraph, then it says, it gives another reason for distinguishing the prior art that was of record. And it says, this application is also allowed because of the order in which the steps are recited in the claim. For instance, all the limitations take place before the interview is conducted. So I don't read that, and I don't think it's reasonable to read that as doing anything other than saying, and here's another reason that the prior art that was before the examiner does not teach the claimed invention. And as this court has said, for instance, in the synopsis case, novelty does not equate to patent eligibility under Section 101. So even though the examiner determined that, arguably, that there was novelty, the examiner didn't expressly address patent eligibility at all. In fact, the examiner had the first set, and only the first set, of instructions post-ALICE concerning that. And those set out a pretty detailed, you do step one of ALICE, you determine if there's an abstract idea. If you find that it's an abstract idea, and then you go to step two of ALICE, there's nothing expressly that says that that analysis was performed at all in the notice of allowability. Third. You presume that it was undertaken, right? I mean, we're supposed to presume that the examiner, in fact, did her job and that she considered that, right? Of course. But even if that was the case, you know, this. It doesn't mean we have to agree. No, exactly. But that doesn't, there's a presumption there that the patent's valid. I think that's correct, Your Honor. And the, or at least there's a presumption that the examiner considered that issue. But this court is not bound by what the examiner determined regarding that, regardless of whether it is stated expressly. And we don't think it is. We think that's purely a discussion of the section 101 and 102, or 102 and 103 issues, rather than the section 101 issue. But even if it were, it's not binding on this court. The fact that it was post-Alice, we don't think is significant. And the reason for that is that the examiner did not have the benefit of significant case law that this court has developed post-Alice and post the notice of allowability. Most notably, the ultra-mercial case, which came back on remand to this court, had not been issued by this court yet. And this court addresses, in the ultra-mercial, addresses, again, the order of steps. So that was not precedent that the examiner had before her when she considered this application. I do want to note, also, there's some reference in the briefing to decades of prosecution for the 416 patent. In fact, those decades were all for parent application. The 416 was filed on Labor Day and was issued around Thanksgiving. So there were no office actions. This is the only communication of substance from the patent office concerning the claims that are at issue today. There's also some discussion in the briefing of statements that were made in advertising or were purported to have been made in advertising by Chexter. And in one case, a quote of a statement that is supposed to have been made by a Chexter customer rather than employee. And that is not something that we think can outweigh the evidence of the specification and the claims, which show and specifically talk about the conventional computer implementation of this idea. There's one part of the specification that refers to generating the web pages and that's where you go and fill out the form. But that uses. What column are you looking at? One moment, please, Your Honor. It is column four, beginning at line 59, actually beginning at line 51. The web pages are generated by a conventional database web page generating engine, such as PHP, Hypertext Preprocessor in conjunction with a relational database program. I don't think there's any kind of an assertion that any of this is unconventional computer technology. At one point, there was a reference that you can use any computer. And it just adds nothing. It adds nothing inventive to the abstract idea that is inherent in the patent itself. The district court closed its order by saying that the 416 patent's a time-honored process. Reference checking, taking this traditional process and computerizing it is not enough. Anonymity of the data is not enough. Encouraging clients to use the method before interviewing applicants is not enough. Where, if anywhere, did the district court say that not only is anonymizing data not enough, but that anonymizing data is actually itself familiar, conventional, traditional, whatever the right gentleman's word is? I'm not sure where that is, Your Honor. I'd have to search for it. He says at the very conclusion that it is insufficient, that merely anonymizing data is insufficient for obtaining patentability in this case. Again, it is the process of anonymizing is through use of a computer as a third party intermediary. Again, that's the mortgage grader case. That's Alice itself, in a way. Unless the court has other questions, I thank you. Thank you. Mr. Pence, you have a bit over two minutes. So first, Your Honor, focusing on that conclusion where the court was just discussing, there was some language that was omitted from the reading. And that is the language where the court explicitly recognized the improvements that this specialized order of steps delivers, which is it improved the process, it provides more helpful data-driven responses, and it improves the quality of the recommendations. And so that's some of the new and useful results that are also alleged in the complaint. And based on those new and useful results and the unconventional. Haven't we said a number of times that taking information and being intelligently and even novelly selective, novelly, about what information you're going to gather and what information you're going to set next to other information for viewing can really be quite useful to people, but it's not in the relevant protected field of Title 35. There's other cases, however, Your Honor, which do not find something ineligible simply because there's a manipulation of data. The McGrow case is one of them, where there was a specialized means. All these steps were in the prior art, but that specialized means, which rendered data into a different format, which is what we have here in the Patent Office, it's a very meaningful requirement, which is the words that McGrow uses. How do we know that? Because the Patent Office, in its prior art evaluation, highlighted the limitation that rendering of the data into a different format, the aggregation of it into statistical scores, so that is kept confidential. Who, from who? From the employer, so that you get the more candid feedback. That is an important step. It's unconventional. It hasn't been done. And under Alice and NASCOM, if you have an unconventional arrangement, which is what we have here, and it's innovative, they have spawned an industry with this. And I know those things are something for another day, but it's meaningful. It made a difference to the Patent Office. And the Patent Office found that the order slash steps, at least on a motion to dismiss, those are words, it doesn't say the prior art, those are words of under 101. There was an explicit finding, it's reasonable to construe it, and the Patent Office is assumed to be a person of skill in the art. This is not a subjective standard. This standard should, like all the other standards out there, the cases don't address it yet. You don't quite sound like you're preparing to wrap up. You should be. You're over time, aren't you? You are over time. I'm sorry. You're out of time. That's OK. OK, thank you. Thank you very much. The case is submitted.